UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
:
**DONIELLE LONG, et al,**           :
:
      **Plaintiffs,**              :
:    Civil Action No. 09-2130 (GK)
      v.                           :
:
**DISTRICT OF COLUMBIA, et al.**    :
:
      **Defendants.**              :
_____

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    The Defendant, through counsel, respectfully replies to the Plaintiff's April 24, 2010, Opposition to Defendant's Motion for Summary Judgment and Reply to Defendants' Opposition to Motion for Summary Judgment ("Opposition").

    In the Defendants' April 2, 2010, Motion for Summary Judgment and Opposition to the Plaintiff's Motion for Summary Judgment ("Motion"), Defendants argued that; 1) Plaintiff failed to prove that DCPS violated the Child Find provisions of IDEA because there is no evidence in the record which demonstrates that DCPS had actual notice of this evaluation or its results; 2) there is no evidence of actual, substantive educational harm to D.L. as a result of any failure by The Roots PCS or Plaintiff to follow up with the October, 2006 evaluation which Plaintiff claims initiated DCPS' Child Find obligation; 3) Plaintiff has failed to demonstrate the need for further testing of D.L. beyond the testing ordered by DCPS; and 4) the IEP developed for D.L. was appropriate.  Plaintiff also mistakenly believed that the IEP left out social and emotional goals based upon an incomplete copy of the IEP.

In her Opposition, Plaintiff argued that 1) DCPS is responsible for carrying out child find responsibilities from 2006 when D.L. attended Roots PCS; 2) that D.L. suffered substantive harm DCPS' failure to comply with IDEA by ordering additional tests and evaluations; 3) that D.L.'s IEP was inadequate in that it somehow did not address all of his educational needs; 4) that Plaintiff was not allowed to fully participate in D.L.'s placement decision because the MDT team did not reconvene to reconsider D.L.'s placement at Brightwood and; 5) that D.L. is entitled to compensatory education services (even though she did not present a case for such services.)

Plaintiff's argument that she was not allowed to participate in the placement determination for D.L. is undermined by the fact that she, along with her educational advocate, attended every MDT meeting for D.L. at Brightwood. Further, Plaintiff did not allege in her due process complaint that she was not permitted to participate in the placement decision and raises this claim for the first time in her Complaint in an effort to re-litigate the placement decision. The fact that the MDT team made a placement decision that Plaintiff disagreed with is not evidence that she was not able to fully participate in the placement decision.

Finally, as to compensatory education services, Plaintiff assumes that compensatory education is an automatic result of a finding of a denial of a FAPE. This position is not supported by statute or case law. Plaintiff failed to present a proper case for compensatory education below, relying solely upon the comments of *one* team member of an MDT convened to establish a student evaluation plan ("SEP") for D.L. His comments alone cannot be used to support a claim for compensatory education, especially since he was never called to testify at the hearing below. The relevant work of

the MDT came from the follow up eligibility determination meeting in May, 2009, where it was determined the compensatory education services for D.L. were not warranted.

Plaintiff's arguments are without merit.

## **ARGUMENT**

I. **There is no evidence that DCPS had notice of D.L.'s suspected disability**

Plaintiff's Opposition correctly cites DCPS' child find obligations under *20 U.S.C. 1412(a)(3)(A)*. However, Plaintiff has not cited any portion of the record that shows DCPS was aware of any suspected disability in D.L. such that it was obligated to follow up on the October, 2006 evaluation ordered by the Roots PCS. The evidence in the record fails to establish any communication regarding D.L.'s suspected disability between The Roots PCS and DCPS, between the psychologist who performed the October, 2006 evaluation and DCPS or between the Plaintiff and DCPS until January, 2009, when Plaintiff requested an MDT meeting at Brightwood Elementary School. Prior to January, 2009, DCPS had no knowledge of the October, 2006 evaluation.

Indeed, Plaintiff's own testimony at the administrative hearing disproves Plaintiff's theory that DCPS' child find obligation began in October, 2006. Tr. at pp. 98-106. Plaintiff merely stated that the special education process "was initiated when he was going to Roots, between 2006 and 2007." Tr. at 99. There is no testimony or documentary evidence to show what occurred between October, 2006 and late 2008, when D.L. enrolled in Brightwood. The Educational Advocate testified that she did not meet Plaintiff until 2008 or 2009, and had no personal knowledge of any attempt to evaluate D.L. in 2006. Tr. at 17-19. Special Education Coordinator Barbara Looper, testified that she was not aware of what occurred at the Roots until D.L. enrolled at

3

Brightwood for the 2008-2009 school year and she was contacted by his attorneys.  Tr. at pp. 86-87. No witness testified that prior to 2009 that DCPS was aware of any testing of D.L. or that he had a suspected disability.

Moreover, there is no evidence in the record that the psychological evaluation was provided to DCPS or to The Roots PCS. Nor is there evidence that Plaintiff ever notified DCPS after the evaluation was completed. It is the Plaintiff's burden to prove all aspects of her claim. See, DCMR § 5-3030.3; *Schaffer v. Weast,* 546 U.S. 49 (2005).

So, while it is true that school districts have an obligation to identify students who might be disabled and evaluate those students to determine whether they are indeed eligible for special education services pursuant to *20 U.S.C. §1412(a)(3)(A)*, it is also true that this obligation does not exist in a vacuum.[1] The statute does not mandate omniscient knowledge on the part of the school district of every student's potential, nor does it require a school district to test every child for special education services and follow up with an MDT meeting.  It requires such intervention only for those students "who are in need of special education and related services." The duty to act applies once a school district has knowledge that a student has a suspected disability.

Plaintiff argues that the notes of Placement Specialist, Evan Murray, wherein he appears to have apologized to the parent for not following through on the October, 2006

---

[1] 20 U.S.C. §1412(a)(3)(A): All children with disabilities residing in the State, including children who are homeless or wards of the state and children with disabilities attending private schools, regardless of the severity of their disability, <u>and who are in need of special education and related services</u>, are identified, located and evaluated and a practical method is developed and implemented to determine which children are currently receiving needed special education and related services. (emphasis added)

evaluation and promising her that, going forward, "DCPS will work diligently"—demonstrate that DCPS had notice of its child find obligations in 2006 AR at 60. Pl's Opp at 11 & AR at 60. However, these notes are merely gratuitous comments expressed during an SEP meeting and provide no support for Plaintiff's claim that DCPS was on notice of D.L's suspected disability in October, 2006. Mr. Murray's comments may just as easily be interpreted as efforts to placate the Plaintiff. It is telling that Plaintiff did not have Mr. Murray testify on her behalf to express those sentiments which Plaintiff now argues supports her claims.

The Hearing Officer correctly determined that there was "no evidence that DCPS was put on notice of Dr. Mack's evaluation prior to the MDT meeting on March 20, 2009." AR at 10. Accordingly, Plaintiff's claim that DCPS violated its child find obligations to D.L. is not supported by any factual evidence and must be dismissed.

## II.     **All necessary evaluations were completed.**

Plaintiff fails to distinguish between the requirement that DCPS complete all "necessary" evaluations of D.L. and her belief that DCPS is required to conduct *every* evaluation she requests. There is no requirement that a school district conduct every test requested by the parent in order to provide a FAPE. *Reid v. District of Columbia*, 401 F.3d 516, 525 (D.C. Cir. 2005)(Ordinary IEPs need only provide some benefit to the child). Here, Plaintiff's requests that DCPS conduct a Functional Behavioral Assessment (FBA) occurred after the MDT team meeting in May, 2009 occurred and had already rejected the need for more testing. AR at 253. Furthermore, Plaintiff's request for an occupational therapy (OT) evaluation is moot because it was ordered by the MDT.

5

Plaintiff argues that the recommendations of her educational advocate are sufficient justification for additional evaluations. However, Plaintiff's educational advocate is not an expert. Furthermore, her recommendations were noted by the MDT committee, but were ultimately rejected. AR at 253. Plaintiff also quotes selectively from the report of DCPS School Psychologist Terrance Beason to support her claim for more testing. Pl's Mot at 6-7 & AR 70. However, his full report was considered by the May 20, 2009 MDT team before it made its eligibility determinations and developed an IEP for D.L. AR at 253.[2] All of the arguments made by Plaintiff for more testing were heard both at the MDT meeting and in the administrative hearing and were considered and rejected.

The evidence presented by Plaintiff, without the support of any expert testimony and against the opinion of the MDT's expert psychologists, was insufficient to support a claim for more evaluations. This Court must give due deference to the Hearing Officers because of their expertise in reviewing and deciding the specialized matters that come before them on special education issues. *Block v District of Columbia*, 748 F.Supp. 891, 896 (D.D.C. 1990)("The Hearing Officer was utilizing his knowledge and experience such that judicial deference to his expertise is especially appropriate").   Plaintiff has failed to meet her burden of persuasion that the Hearing Officer was incorrect by a preponderance of the evidence and her motion must be denied.

### III.     **Plaintiff Fully Participated in the Placement Decision.**

Plaintiff's claim that she was denied an opportunity to fully participate in the placement decision is a canard to once again re-litigate the decision of the May, 2009

---

[2]  "The team recognizes that comp ed has been discussed (March 20, 2009 meeting). However, this team *disagrees* with the request for comp ed, speech, Linda-Mood Bell and we disagree with the camp program. No further independent testing is needed (speech and language, OTIPT, Psycho-Ed, Clinical evaluation) (emphasis added)" AR at 253.

6

MDT to reject her request for a full time program and private placement at Accotink. In fact, Plaintiff never claimed she was denied an opportunity to "participate" in the placement decision in her due process complaint. AR at 110-111. Rather, Plaintiff claimed that the placement itself was inappropriate. Id. This is the claim that was litigated below, not whether she was denied an opportunity to participate. As such, Plaintiff cannot now raise issues that were not litigated below. 20 U.S.C. § 1415(i)(2); *Shaw v. District of Columbia*, 238 F.Supp.2d 127, 135 (D.D.C. 2002) (concluding that, under IDEA's judicial review provisions, a district court cannot address an issue that was not first presented to the hearing officer); *Cox v. Jenkins*, 878 F.2d 414, 420 (D.C. Cir. 1989)); *Herbin ex rel. Herbin v. District of Columbia*, 362 F.Supp.2d, 254, 263 n.10 (D.D.C. 2005).

Nevertheless, Plaintiff's claim that she was not allowed to participate in the placement decision is belied by the fact that she and her Educational Advocate attended every MDT meeting for her child. AR at 249. Meaningful participation in a placement decision does not guarantee that the parent will obtain the placement that she desired. Rather, it means she is permitted to provide her input and to discuss the alternative placements for her child.

Here, Plaintiff and her Educational Advocate met with the MDT placement team and obviously had a difference of opinion as to whether Brightwood could implement the IEP for D.L. Plaintiff claims she was not allowed to participate in the final placement decision because the meeting notes from the May, 2009 MDT meeting indicate that "This team will have to reconvene to discuss change of placement. School is unable to implement IEP." AR at 253. However, Ms. Looper, Brightwood's Special Education

7

Coordinator at the MDT meeting, testified that Brightwood could, in fact, implement the IEP. Tr. at 94-96.  She explained in the hearing below that the notes in the MDT meeting probably assumed that D.L. would be in a full time program, as the Plaintiff requested. However, D.L. was not awarded a full time program. His IEP provided for only 15 hours a week, which could be accommodated at Brightwood. Tr. at 94.   This was the program that was developed in the May, 2009 MDT meeting in which Plaintiff and her Educational Advocate provided input. AR at 249-253.

All of the relevant information regarding D.L.'s IEP and placement at Brightwood was elicited at the May, 2009 MDT meeting, despite the notation regarding the need to discuss a change of placement. AR at 249-253. As such, the placement decision was appropriate and Plaintiff had a full opportunity to participate in making that decision. *Jalloh v. District of Columbia*, 535 F.Supp. 2d 13, 23 (D.D.C. 2008) (child's placement appropriate even though the required information was not set forth in the required Prior Notice, it was elicited at the MDT/IEP meeting). Plaintiff failed to demonstrate by a preponderance of the evidence that Brightwood was not an appropriate placement. The Hearing Officer concluded that Brightwood was an appropriate placement for D.L. AR at 13.

Plaintiff's belief that she was not afforded an opportunity to provide meaningful participation in the placement decision for her child is simply not supported by the facts and was not litigated below. Her claim must be dismissed.

**IV.**     **Plaintiff Failed to Support a Claim for Compensatory Education.**

To prove an entitlement to compensatory education, Plaintiff must first prove a denial of a FAPE.  An award of compensatory education must be reasonably calculated to

provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place. *Reid v. District of Columbia,* 401 F.3d 516 (D.C. Cir. 2005).

Here, Plaintiff failed to present any evidence to support a denial of FAPE, much less, an award of compensatory education services. Although, Plaintiff claims there was a three year delay in providing special education services for D.L., she has failed to prove that the alleged three year delay was known to DCPS and what, if any, special education services would be needed by D.L. to compensate for that three year delay. The burden is upon the Plaintiff to prove all elements of her case, including the need for and scope of compensatory education services. *Schaffer v. Weast,* 546 U.S. 49 (2005). She cannot now expect this Court to create out of whole cloth, an appropriate award of compensatory education based upon the record below. Nor is it the Court's duty to sift through the record to find some shred of support for a claim advanced by a party.

In the absence of any evidence to support an award of compensatory education services, Plaintiff's claim must be denied.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Defendant's Motion for Summary Judgment, and deny Plaintiff's Motion for Summary Judgment.

    Respectfully submitted,

    PETER J. NICKLES
    Attorney General for the
    District of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General
    Civil Litigation Division

                                                <u>/s/Erica Taylor McKinley/s/</u>
                                                ERICA TAYLOR MCKINLEY [467884]
                                                Chief, Section II
                                                Civil Litigation Division

                                                */s/ <u>C. Vaughn Adams</u>*
                                                C. VAUGHN ADAMS [449770]
                                                Assistant Attorney General
                                                Office of the Attorney General
                                                441 Fourth Street, N.W., Sixth Floor South
                                                Washington, D.C.  20001
                                                (202) 442-9840 (phone)
                                                (202) 741-5903 (facsimile)
                                                corliss.adams@dc.gov


**May 17, 2010**