|  |  |  |
|---|---|---|
| **DONIELLE LONG, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 09-2130 (GK)** |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs are D.L., a minor, and his mother, Donielle Long. On November 13, 2009, Plaintiffs brought suit under 20 U.S.C. § 1415(i)(2)(A) of the Individuals with Disabilities Education Act ("IDEA") against Defendants District of Columbia, Mayor Vincent Gray, Acting Attorney General Irvin Nathan, and Acting Chancellor of the Public Schools Kaya Henderson.[1] This matter is before the Court on Plaintiffs' Motion for Summary Judgment [Dkt. No. 12] and Defendants' Cross Motion for Summary Judgment [Dkt. No. 13]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Plaintiffs' Motion for Summary Judgment is **granted in part and denied in part**, and

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Defendants Gray, Nathan, and Henderson are automatically substituted for their predecessors Adrian Fenty, Peter Nickles, and Michelle Rhee.

Defendants' Motion for Summary Judgment is **granted in part and denied in part**.

## I.    Factual and Procedural Background

D.L. is a thirteen year old student currently living in the District of Columbia. See Administrative Record ("AR") at 268. D.L. began attending Brightwood Elementary School ("Brightwood") in kindergarten, transferred to Roots Public Charter School ("Roots PCS") for the second through fifth grades, and subsequently re-enrolled at Brightwood for the 2008-2009 school year. Id. at 4-5. The District of Columbia Public Schools ("DCPS") acts as the local educational agency ("LEA") for Roots PCS. Id. at 213-14.

In the fall of 2006, a Multi-Disciplinary Team ("MDT") at Roots PCS referred D.L. to Dr. Keisha Mack due to concerns about his academic performance. Id. at 268. On October 10, 2006, Dr. Mack completed a psycho-educational evaluation of D.L. and diagnosed him with a learning disorder, a developmental coordination disorder, and a possible language disorder. Id. at 268, 274. Dr. Mack recommended that D.L. receive specialized education services to address his weaknesses in reading and writing. Id. at 274. She also recommended that an MDT at Roots PCS further assess D.L. with a speech-language evaluation, an occupational therapy ("OT") evaluation, a clinical evaluation, and a behavior intervention plan

("BIP"). Id. DCPS did not complete the recommended tests or provide special education services to D.L.  Id. at 267-78.

On January 22, 2009, D.L.'s mother, concerned about D.L.'s lack of academic progress at Brightwood, requested DCPS to reevaluate him for special education eligibility. Id. at 193. She asked DCPS to perform psycho-educational, clinical psychological, speech and language, social history, and OT evaluations, as well as a medical assessment. Id.

On March 20, 2009, Brightwood convened an MDT meeting, including D.L.'s mother and educational advocate, to determine D.L.'s eligibility for special education services. Id. at 212, 249. Over the advocate's objection, the MDT did not find the 2006 psycho-educational evaluation performed by Dr. Mack conclusive as to D.L.'s current eligibility for special education services and decided to withhold an eligibility determination until re-evaluations were completed. Id. at 212. The MDT stated that D.L. would be awarded compensatory education services dating back to October 2006 if he was determined to be eligible for special education after testing. Id. at 214. The MDT developed a student evaluation plan ("SEP"), which included comprehensive psychological, social history, and speech and language evaluations. Id. at 219. The MDT meeting notes reflected that D.L.'s mother no

longer desired that D.L. receive an OT evaluation. Id. at 215. On April 7, 2009, however, Ms. Long's counsel sent a letter to DCPS, stating that the parent's position on the OT evaluation had been misstated and that she wanted D.L. to receive the evaluation. Id. at 228.

On April 9, 2009, Plaintiffs filed a Due Process Complaint. Plaintiffs alleged that DCPS had (1) violated Child Find procedures by failing to identify D.L. as a student with a specific learning disability, develop an Individualized Educational Program ("IEP"), and/or make special education services available to the student; and (2) failed to conduct the re-evaluations requested by the parent and/or failed to conduct re-evaluations in a timely manner and reconvene an MDT to review evaluation results. Id. at 22.

On April 22, 2009, DCPS completed the speech and language evaluation of D.L. and determined that the results were not consistent with a diagnosis of speech and language impairment. Id. at 64-65. On April 30, 2009, DCPS completed the social history report, which indicated that D.L. continued to experience academic difficulties and behavior problems. Id. at 66-68. On May 12, 2009, DCPS completed the comprehensive psychological evaluation of D.L., and the results indicated that D.L. met the DCPS criteria for special education intervention. Id. at 69-83.

On May 18, 2009, DCPS convened a second MDT meeting to review the 2009 evaluations. Id. at 249. The MDT determined that D.L. was eligible for special education services as a learning disabled student. Id. at 251. Accordingly, DCPS developed an IEP consisting of fifteen hours per week of individualized instruction in and out of the general education setting, thirty minutes per week of behavioral support services, and one hour per month of speech and language consultation services.[2] Id. at 252-53. The MDT meeting notes indicate that the MDT thought that Brightwood would be unable to implement the IEP. Id. at 253. At the same May MDT meeting, DCPS refused to provide D.L. with compensatory education services from 2006. Id. at 252-53. DCPS also failed to complete additional testing that Plaintiffs had requested (e.g. an OT evaluation) or that Dr. Mack had recommended in her 2006 evaluation of D.L. (e.g. a BIP). Id. at 252-53.

D.L.'s mother and his educational advocate disagreed with the proposed IEP and sought a compensatory education plan including one hour per week of counseling, two hours per week of individualized tutoring in reading and math, one hour per week of independently

---

[2] The record reveals that page 5 of the IEP, which noted the 30 minutes per week of behavioral support services, was missing from the parent's copy of the IEP. Over Plaintiffs' objection, the Hearing Officer permitted Defendants to submit page 5 of the IEP into evidence at the administrative hearing. See AR at 12.

provided speech-language therapy, summer camp to address social and emotional behavior deficits, and a Lindamood Bell assessment. Id. at 259. The parent and advocate also requested a BIP, which would have required completion of a functional behavioral assessment ("FBA"), and an OT evaluation. Id. at 256. The MDT declined to implement the suggested additions to the IEP. Id. at 253.

On June 4, 2009, Plaintiffs filed an Amended Due Process Complaint. Plaintiffs supplemented their initial Complaint with allegations that DCPS failed to (1) develop an appropriate IEP; (2)provide an appropriate placement for D.L.; (3) complete an OT evaluation; (4) conduct a BIP/FBA; and (5) provide D.L. with compensatory education services. Id. at 103-104.

On August 5, 2009, an administrative hearing was held. Id. at 126. Upon consideration of the evidence and testimony presented, the Hearing Officer issued a decision and order on August 15, 2009 dismissing Plaintiffs' Amended Complaint with prejudice. Id. at 11. The Hearing Officer determined that Plaintiffs had failed to show that Defendants violated the IDEA. Id.

Subsequently, on November 13, 2009, Plaintiffs brought a civil action in this Court challenging the Hearing Officer's decision pursuant to 20 U.S.C. § 1415(i)(2)(A). On March 4, 2010, Plaintiffs filed a Motion for Summary Judgment [Dkt. No. 12]. On April 2,

2010, Defendants filed a combined Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion [Dkt No. 13]. On April 24, 2010, Plaintiffs filed a combined Reply to Defendant's Opposition and Opposition to Defendant's Cross-Motion [Dkt. No. 16]. On May 17, 2010, Defendants filed a Reply to Plaintiffs' Opposition [Dkt. No. 17].

## II.  Standard of Review

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of the action under the governing law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotations omitted). See Laningham v. U.S. Navy, 813 F.2d

7

1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

## III. Analysis

### A.    IDEA Framework

Congress enacted the IDEA to ensure that children with disabilities have access to "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A) (2005). School districts must ensure that "all children with disabilities residing in the State . . . who are in need of special education and related services" are identified. Branham v. Gov't of the District of

8

Columbia, 427 F.3d 7, 8 (D.C. Cir. 2005) (quoting 20 U.S.C. § 1412(a)(3)(A)). Once such children are identified, a "'team' including the child's parents and select teachers, as well as a representative of the local educational agency with knowledge about the school's resources and curriculum, develops an 'individualized education program,' or 'IEP,' for the child." Branham, 427 F.3d at 8. "[T]he IEP must, at a minimum, 'provid[e] personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.'" Id. (citing Bd. of Educ. Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 203, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)).

State educational agencies and LEAs receiving federal assistance under the IDEA must institute procedural safeguards, including providing parents of a disabled child "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement" of their child. 20 U.S.C. §§ 1415(a), (b)(6). After parents make such a complaint, they are entitled to "an impartial due process hearing" conducted by the agency. Id. § 1415(f).

During a due process hearing held pursuant to the IDEA, "DCPS bears the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed

placement is adequate to meet the education needs of the student." D.C. Mun. Reg. § 3030.3; see also Scorah v. District of Columbia, 322 F. Supp. 2d 12, 14 (D.D.C. 2004).

Any party aggrieved by the findings or decision of a hearing officer may bring a civil action in state or federal district court to obtain appropriate relief. 20 U.S.C. § 1415(i)(2)(A). The party challenging a hearing officer's decision in federal court carries the burden of proof by a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C); Angevine v. Smith, 959 F.2d 292, 295 (D.C. Cir. 1992); Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988).

While the court may make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." Lyons v. Smith, 829 F. Supp. 414, 418 (D.D.C. 1993). When neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).

Although the courts should not "substitute their own notions of sound educational policy for those of the school authorities

which they review," <u>Rowley</u>, 458 U.S. at 206, "given the district court's authority to 'hear additional evidence at the request of a party' and 'bas[e] its decision on the preponderance of the evidence,' IDEA 'plainly suggest[s] less deference than is conventional' in administrative proceedings." <u>Reid v. District of Columbia</u>, 401 F.3d 516, 521 (D.C. Cir. 2005)(internal citations omitted).

The role of a reviewing court under the IDEA is two-fold. First, it must determine whether DCPS has complied with the procedural requirements of the IDEA. <u>Rowley</u>, 458 U.S. at 206. Second, it must determine whether the "individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." <u>Id</u>. at 207.

In this case, Plaintiffs challenge the Hearing Officer's decision that DCPS provided D.L. with a Free Appropriate Public Education ("FAPE") on five grounds. Plaintiffs argue that (1) DCPS violated its Child Find obligations by failing to timely identify D.L. as a child with a learning disability; (2) DCPS failed to develop an appropriate IEP; (3) DCPS failed to provide an appropriate placement; (4) DCPS failed to evaluate D.L. in all suspected areas of disability, including failure to conduct an OT evaluation and a BIP/FBA; and 5) DCPS failed to provide D.L. with

necessary compensatory education. See generally Pls.' Mot. Each of these claims will be addressed in turn.

**B.   DCPS' Compliance With Its Child Find Obligations**

Plaintiffs allege that DCPS failed to comply with its "Child Find" obligations. Pls.' Mot. for Summ. J. ("Pls.' Mot.") 6. The IDEA requires LEAs to have a comprehensive Child Find system to ensure that all children who are in need of early intervention or special education services are located, identified, and referred appropriately. See 20 U.S.C. § 1412(a)(3). Child Find is DCPS' affirmative obligation under the IDEA: "As soon as a child is identified as a potential candidate for services, DCPS has the duty to locate that child and complete the evaluation process. Failure to locate and evaluate a potentially disabled child constitutes a denial of FAPE." N.G. v. District of Columbia, 556 F. Supp. 2d 11, 16 (D.D.C. 2008). DCPS must conduct initial evaluations to determine a child's eligibility for special education services "within 120 days from the date that the student was referred [to DCPS] for an evaluation or assessment." D.C. Code § 38-2561.02(a).

The parties disagree as to when DCPS learned of the October 2006 evaluation that diagnosed D.L. with learning disabilities and recommended that he receive special education services. Plaintiffs argue that DCPS had notice of the evaluation prior to the MDT

meeting of March 20, 2009. Pls.' Mot. 6-7. In support of this argument, Plaintiffs note that D.L. was referred for the October 2006 evaluation by the MDT at Roots PCS and that DCPS was the LEA for Roots PCS. Id. at 6. Plaintiffs also point out that DCPS promised them at the March 20, 2009, MDT meeting that D.L. would receive compensatory education from October 2006 if he was found eligible for special education, indicating that DCPS was aware of the October 2006 evaluation prior to the 2009 meeting. Id. at 7; AR at 61. In addition, Plaintiffs point out that Evan Murray, an LEA Representative and DCPS Placement Specialist, apologized for DCPS' delay in following through on the referral process, stating at the March 2009 MDT meeting that "DCPS will work diligently" to complete the process initiated in October 2006. Pls.' Mot. 7; AR at 60.

In response, Defendants assert that Plaintiffs did not inform DCPS of D.L.'s suspected learning disability until the March 20, 2009 MDT meeting. Defs.' Mot. for Summ. J. ("Defs.' Mot.") 12. At that time, Defendants state that their Child Find obligations were triggered and that DCPS conducted the evaluation process in a timely manner. Id. at 14. Defendants further argue that, even if Plaintiffs can show that DCPS had notice of the 2006 evaluation prior to the March 2009 MDT meeting, Plaintiffs are not entitled to relief because they did not demonstrate any harm resulting to D.L. from DCPS' failure to timely follow up on the 2006 evaluation. Id.

13

at 12. Defendants contend that Plaintiffs cannot demonstrate any harm to D.L. because the MDT took the October 2006 evaluation into consideration in March 2009 and May 2009 when it developed D.L.'s SEP and IEP. Id. at 14.

The Hearing Officer agreed with Defendants, concluding that Plaintiffs only put DCPS on notice of the October 2006 evaluation at the March 20, 2009 MDT meeting. AR at 10. The Hearing Officer then found that DCPS completed and reviewed all evaluations deemed necessary by May 18, 2009, within the 120-day statutory deadline. Id. The Hearing Officer further concluded that the MDT which met in May 2009 found D.L. eligible for special education and developed an IEP for the student, in accordance with the IDEA's requirements. Id.

Although the Court must give "due weight" to a Hearing Officer's decision, "a decision without reasoned and specific findings deserves little deference." Kerkam v. Superintendent, D.C. Pub. Schs., 931 F.2d 84, 86-87 (D.C. Cir. 1991) (internal quotations omitted). Here, the Hearing Officer found that "[p]etitioner offered no evidence that DCPS was put on notice of Dr. Mack's evaluation prior to the MDT meeting on March 20, 2009." AR at 10 (emphasis added). This is plainly untrue.

The record discloses that DCPS was the LEA for Roots PCS when the school referred D.L. for a psycho-educational evaluation in 2006. Id. at 213-14; 268. In addition, the March 2009 MDT meeting notes contain an apology from DCPS to D.L.'s mother for "not following through on the referral process," indicating that DCPS was well aware of D.L.'s suspected learning disability prior to that meeting. Id. at 60.  In fact, at that meeting, DCPS conceded that "this process began back in 2006." Id. at 61. Lastly, DCPS promised compensatory education services for D.L. from 2006 if D.L. was found to be eligible for special education services, indicating DCPS' acknowledgment that the referral process was initiated at the time of Dr. Mack's evaluation. Id. The Hearing Officer's decision references none of this evidence and fails to explain why the 2006 referral for evaluation did not trigger DCPS' Child Find obligations.

Defendants admit that, "the evidence might be argued to suggest that the finding by the Hearing Officer that DCPS was not on notice was incorrect," but argue that "such an arguable error was inconsequential because Plaintiff failed to demonstrate any resulting substantive harm to D.L." Defs.' Mot. 12. Defendants' position is unpersuasive. When DCPS finally followed through on its Child Find obligations, the MDT ordered special education services

for D.L. See AR at 251. Meanwhile, D.L. lacked access to the special education curriculum from 2006 until the MDT developed an IEP in May 2009, well after the 120-day statutory time period for carrying out Child Find obligations. See id. at 252-53. Surely, one cannot seriously argue that deprivation of special education services for a period of three years has not harmed a child.

Defendants also suggest that DCPS received notice of D.L.'s suspected learning disability only when D.L.'s mother "physically presented [DCPS] a copy of the 2006 evaluation" at the March 2009 MDT meeting. Defs.' Mot. 14. However, DCPS' Child Find obligations are triggered "as soon as a child is identified as a potential candidate for services," and a parent does not need to request the LEA to evaluate a child. See N.G., 556 F. Supp. 2d at 16, 25. D.L. was located and identified as a potential special education candidate in October 2006, triggering DCPS' Child Find obligations at that time. Thus, Plaintiffs have shown by a preponderance of the evidence that the Hearing Officer's decision was erroneous and that DCPS denied D.L. a FAPE by delaying determination of D.L.'s special education eligibility.

**C.   DCPS' Development of an Appropriate IEP**

Plaintiffs allege that D.L.'s IEP was inappropriate because it contained (1) no social/emotional goals and objectives; and (2) an insufficient amount of specialized instruction. Pls.' Mot. 19.

Defendants contend that the IEP affords an appropriate amount and type of special education services for D.L. Defs.' Mot. 17.

Under the IDEA, LEAs must develop a detailed IEP for every child with a disability. 20 U.S.C. § 1414(d)(2)(A). The Supreme Court has explained that an IEP must be "reasonably calculated to enable the child to receive educational benefits," Rowley, 458 U.S. at 207. The IEP must be tailored to enable the child "to achieve passing marks and advance from grade to grade." Id. at 203.

The Hearing Officer found that the IEP was appropriate for D.L. First, the Hearing Officer noted that Defendants' copy of the IEP contained a page missing from Plaintiffs' copy. AR at 12. This missing page included social/emotional goals and provided for 30 minutes of weekly instruction focusing on social/emotional objectives. Id.[3] Second, the Hearing Officer found that the amount of specialized instruction proposed in the IEP (fifteen hours per week) was appropriate because neither Dr. Mack, who conducted the initial October 2006 evaluation, nor Mr. Terrence Beason, the school psychologist, recommended full-time specialized instruction for D.L. Id.

---

[3] As noted earlier, the Hearing Officer allowed Defendants to submit the missing page of the IEP into evidence over Plaintiffs' objection. See supra p. 3, note 1.

While an IEP under the IDEA must be reasonably calculated to furnish educational benefits to the child and must be developed with parental involvement, it does not have to maximize the potential of a disabled child or include all the wishes of a child's parents. See Rowley, 458 U.S. at 189-90; Kerkam v. McKenzie, 862 F.2d 884, 886 (D.C. Cir. 1988) ("[P]roof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the Act."). Under the IDEA, parental concerns are just one factor to be considered by the IEP team when developing the IEP. 20 U.S.C. § 1414 (d)(3)(A)(ii).

In this case, the MDT's failure to include full-time specialized instruction in the IEP does not amount to denial of a FAPE. The record indicates that none of the educational specialists who evaluated D.L. thought that his learning disabilities were severe enough to warrant full-time specialized instruction. In the October 2006 evaluation, Dr. Mack recommended that D.L. receive specialized instruction only in reading and writing. AR at 274. Mr. Beason also found that D.L. was facing his greatest academic difficulty in reading. Id. at 77. Accordingly, it was appropriate for the Hearing Officer to conclude that fifteen hours per week of specialized instruction were "reasonably calculated to enable [D.L.] to receive educational benefits." See Rowley, 458 U.S. at 207. The record also supports the Hearing Officer's conclusion that

the missing page of the IEP discussed social/emotional goals. AR Tr. at 48-52. Thus, Plaintiffs have failed to meet their burden of showing by a preponderance of the evidence that DCPS violated IDEA by issuing an inappropriate IEP.

**D.    DCPS' Selection of an Appropriate Placement**

Plaintiffs assert that Brightwood was an inappropriate placement for D.L. for two reasons: (1) Brightwood was unable to implement the IEP; and (2) D.L.'s parent was not permitted to participate in the MDT's placement determination. Pls.' Mot. 10. Defendants reply that Brightwood can implement the IEP and that Ms. Long and D.L.'s educational advocate participated in the placement decision. Defs.' Mot. 19-21.

The Hearing Officer found that Brightwood was an appropriate placement. Barbara Looper, the special education coordinator for DCPS, noted at the May 2009 MDT meeting that "[t]his team will have to reconvene to discuss change of placement. School is unable to implement IEP." AR at 253. At the administrative hearing, however, Ms. Looper testified that the school would in fact be able to implement the IEP, and she could not explain why she had said otherwise at the MDT meeting. AR Tr. at 94-96. The Hearing Officer credited Ms. Looper's hearing testimony and decided that Brightwood was an appropriate placement.

Under the IDEA, LEAs must make proper placement decisions involving parental participation to ensure that a disabled child has access to a FAPE. 20 U.S.C. § 1415(b)(1). The parent must have a full, meaningful opportunity to participate in the placement decision. A.I. ex rel. Iapalucci v. District of Columbia, 402 F. Supp. 2d 152, 159 (D.D.C. 2005). LEAs must provide a placement for a disabled child that furnishes a "basic floor of opportunity" and that allows him to "benefit from special education." Rowley, 458 U.S. at 187, 201. This consists of "access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." Id.

The record supports the Hearing Officer's decision. Plaintiffs have not shown that the parent's participation in the meetings was restricted in any way. Ms. Long and the educational advocate participated in the March 2009 and May 2009 MDT meetings, where D.L.'s placement at Brightwood was discussed. AR at 45, 249.

Plaintiff's claim that she was denied an opportunity to fully participate in the placement decision has no factual support. First of all, she and D.L.'s educational advocate attended every MDT meeting for D.L. AR at 249. Second, Plaintiff never claimed she was denied an opportunity to "participate" in the placement decision in her due process complaint. AR at 110-111. Rather,

Plaintiff claimed that the placement itself was inappropriate. Id. This is the claim that was litigated below, not whether she was denied an opportunity to participate. As such, Plaintiff cannot now raise issues that were not litigated below. 20 U.S.C. § 1415(i)(2); Cox v. Jenkins, 878 F.2d 414, 420 (D.C. Cir. 1989); Shaw v. District of Columbia, 238 F.Supp.2d 127, 135 (D.D.C. 2002) (concluding that, under IDEA's judicial review provisions, a district court cannot address an issue that was not first presented to the hearing officer).

In addition, the Hearing Officer considered testimony from both parties and credited Ms. Looper's testimony regarding Brightwood's capacity to implement the IEP. While the court is free to consider additional evidence submitted by the parties, it must give "'due weight' to the administrative proceedings and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." Lyons, 829 F. Supp. at 418 (quoting Rowley, 458 U.S. at 205); see also Shaw, 238 F. Supp. 2d at 134. Plaintiffs have voiced disagreement with the Hearing Officer's decision to credit Ms. Looper's testimony, but they have not shown by a preponderance of the evidence that Brightwood is incapable of providing fifteen hours per week of

specialized instruction for D.L. and administering the other services included in the IEP.[4] See Pls.' Mot. 10-11.

**E.    DCPS' Evaluations of D.L.**

Plaintiffs contend that DCPS failed to evaluate D.L. in all suspected areas of disability, thereby depriving D.L. of his right to receive a FAPE under the IDEA, since no FAPE can be provided without the appropriate evaluations. Pls.' Mot. 8. Specifically, Plaintiffs argue that DCPS should have formulated a BIP, which would have required completion of an FBA.[5] Id. at 7.

---

[4] The hearing transcript indicates that Brightwood has resource rooms and other features of an inclusion setting to implement the IEP. AR Tr. at 95. In addition, DCPS asserted at the hearing that "the level of staffing at Brightwood will be significantly increased for the 2009-2010 [school year] and that it will be able to meet Petitioner's educational needs." AR at 5.

[5] Plaintiffs also argue that the Hearing Officer was incorrect in determining that DCPS' failure to conduct an OT evaluation did not constitute a violation of the IDEA. Pls.' Mot. 7. Defendants now state that Plaintiffs' "request for an occupational therapy (OT) evaluation is moot because it was ordered by the MDT." Defs.' Reply 5.

If the OT evaluation has not been completed, it should be. Although the March 2009 MDT meeting notes reflect that D.L.'s mother initially agreed with DCPS that an OT evaluation was unnecessary, Ms. Long's attorney sent a follow up letter to DCPS that put Defendants on notice that she in fact wanted D.L. to receive an OT evaluation. AR at 48, 228. Moreover, Plaintiffs have shown that an OT evaluation was necessary because of D.L.'s "below average" performance on the Beery Developmental Test of Visual Motor Integration ("Beery Test"). AR Tr. at 23. Dr. Mack's 2006 evaluation references the Beery Test results and recommends an OT evaluation to assess D.L.'s visual-motor integration skills. AR at 268, 274. The more recent May 12, 2009 comprehensive psychological

(continued...)

The Hearing Officer determined that the educational advocate, Lori Rodriguez, did not request a BIP/FBA on Plaintiffs' behalf and that Plaintiffs had not presented evidence that behavioral problems during the 2008-2009 school year had an adverse impact on D.L.'s academic performance. AR at 11. However, Plaintiffs insist that Ms. Rodriguez did request a BIP/FBA. Pls.' Mot. 7. Indeed, Defendants concede that a BIP/FBA was requested but claim that the request came too late, after the May 2009 MDT meeting. Defs.' Mot. 16; Defs.' Reply 5. Plaintiffs argue that a BIP/FBA was necessary because the March 2009 and May 2009 MDT meeting notes reflect that D.L.'s behavior problems were affecting his academic performance. See Pls.' Mot. 7; AR at 60. They further assert that DCPS knew of D.L.'s behavioral issues because it had been providing D.L. thirty minutes of weekly counseling to address anger management and coping problems. AR at 46, 48.

Defendants claim that D.L.'s behavioral issues were discussed at length during the MDT meetings before the BIP/FBA was rejected. Id. at 17. Defendants further argue that it is only the personal opinion of Plaintiffs and Ms. Rodriguez that the BIP/FBA should be administered. Id.

_____

(...continued)
evaluation also mentions the Beery Test results. Id. at 70. Thus, Plaintiffs have shown by a preponderance of the evidence that the Hearing Officer was incorrect in concluding that there was no basis for an OT evaluation.

The IDEA does not require LEAs to administer every test requested by a parent or educational advocate. Rather, to ensure that a child with a disability receives a FAPE, an LEA must use "a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information." <u>See</u> 20 U.S.C. § 1414 (b)(2)(A). In the case of a child whose behavior impedes his or her learning or that of others, the IEP team must consider "when appropriate, strategies, including positive behavioral interventions, strategies, and supports to address that behavior." <u>Thomas v. District of Columbia</u>, 407 F. Supp. 2d 102, 106 (D.D.C. 2005); 20 U.S.C. § 1414 (d)(3)(B)(I).

The failure to complete all necessary evaluations results in a substantive denial of FAPE which results in harm to the disabled child. "[I]n the absence of necessary and appropriate evaluations the district cannot develop a program that is tailored to the student's unique needs and reasonably calculated to enable him to receive educational benefits. The evaluation information is needed in order to fashion a legally compliant and educationally beneficial program. Without this data the district court cannot properly educate the student and the hearing officer cannot do equity. As such, an evaluation's primary role is to contribute to the development of a sound IEP." <u>Sitka Borough Educational Agency</u>, 44 IDELR 268 (July 2005).

Plaintiffs have met their burden of proof with regard to the BIP/FBA. In her initial evaluation of D.L., Dr. Mack recommended a BIP/FBA. AR at 274.  As noted earlier, the record also discloses that D.L.'s behavior problems seriously affected his academic performance during the 2008-2009 school year. D.L.'s teacher, a member of the MDT, commented at the March 2009 meeting that "[D.L.'s] behavior impacts his function in the classroom." <u>Id</u>. at 46. Subsequently, at the May 2009 MDT meeting, various teachers remarked that D.L.'s behavior "has declined" and that D.L. was involved in several fights at school. <u>Id</u>. at 250.

Finally, DCPS' provision of counseling to D.L. before his eligibility for special education services was determined indicates that DCPS believed that D.L.'s behavioral issues were impeding his learning ability. Indeed, Defendants appeared to concede at the hearing that a BIP/FBA was warranted: "DCPS is more than willing to . . . ensure that an FBA is put into place for the student." AR Tr. at 14. In light of D.L.'s obvious behavioral issues, it is important to note that "the IDEA . . . recognizes that the quality of a child's education is inextricably linked to that child's behavior," and "[an] FBA is essential to addressing a child's behavioral difficulties, and, as such, it plays an integral role in the development of an IEP." <u>Harris v. District of Columbia</u>, 561 F.

Supp. 2d 63, 68 (D.D.C. 2008). DCPS' failure to complete a BIP/FBA constitutes denial of a FAPE.

### F.  D.L.'s Entitlement to Compensatory Education

Plaintiffs contend that D.L. is entitled to receive compensatory education services from October 2006, when D.L.'s initial evaluation was completed, until May 2009, when his IEP was developed. Pls.' Mot. 11. Plaintiffs contend that D.L.'s IQ dropped by four points during this three year period and, as discussed, _supra_, that he experienced academic and behavioral difficulties due to lack of a special education program. _Id_. at 12. Plaintiffs also argue that DCPS promised them that D.L. would receive compensatory education from 2006 at the March MDT meeting. _Id_. Defendants reply that Plaintiffs have not shown what harm D.L. suffered from DCPS' alleged failure to act in 2006 and have not shown what services are necessary to compensate for any purported harm. Defs.' Mot. 22.

Compensatory education is an equitable remedy for the denial of a FAPE to a child with a learning disability. _Reid_, 401 F.3d at 523. Under the theory of compensatory education, "courts and hearing officers may award educational services . . . to be provided prospectively to compensate for a past deficient program." _Id_. at 522. (internal quotations omitted). Designing a compensatory education remedy requires "a fact-specific exercise of discretion by either the district court or a hearing officer." _Reid_, 401 F.3d

at 524; see also Henry v. District of Columbia, ---F. Supp. 2d---,
2010 WL 4568841, at *3 (D.D.C. Nov. 12, 2010). In either case, "the
inquiry must be fact-specific and, to accomplish IDEA's purposes,
the ultimate award must be reasonably calculated to provide the
educational benefits that likely would have accrued from special
education services the school district should have supplied in the
first place." Reid, 401 F.3d at 524. To aid the court or hearing
officer's fact-specific inquiry, "the parties must have some
opportunity to present evidence regarding [the student's] specific
educational deficits resulting from his loss of FAPE and the
specific compensatory measures needed to best correct those
deficits." Id. at 526. DCPS may be required to "offer proof that
the placement compensated for prior FAPE denials in addition to
providing some benefit going forward." Id. at 525.

This Court has determined that D.L. was denied a FAPE due to
DCPS' failure to comply with Child Find obligations and conduct
necessary evaluations. Therefore, the Court will remand the case to
a Hearing Officer to craft an appropriate compensatory education
remedy. See Henry, ---F. Supp. 2d---, 2010 WL 4568841, at *3.

## IV. Conclusion

For the reasons set forth above, Plaintiffs' Motion for
Summary Judgment is **granted in part and denied in part** and
Defendants' Motion for Summary Judgment is **granted in part and**

**denied in part.** This case is remanded to the administrative hearing officer to craft an appropriate compensatory education remedy and order appropriate tests, including an FBA, for D.L. An Order shall accompany this Memorandum Opinion.


                                          /s/
March 23, 2011                            Gladys Kessler
                                          United States District Judge


**Copies to**: Attorneys on record via ECF